MH

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Heath Shores,<br><br>Plaintiff,<br><br>v.<br><br>Centurion Incorporated, et al.,<br><br>Defendants. | No. CV 20-00759-PHX-DGC (CDB)<br><br><br>**ORDER** |

On April 16, 2020, Plaintiff Robert Heath Shores, who is confined in the Arizona State Prison Complex (ASPC)-Eyman, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed In Forma Pauperis (Doc. 2). On April 27, 2020, he filed a Motion for Appointment of Counsel (Doc. 6). The Court will order Defendant Thomas to answer Counts One and Two of the Complaint and will dismiss the remaining claims and Defendant without prejudice. Plaintiff's Motion for Appointment of Counsel will be denied without prejudice.

**I.      Application to Proceed In Forma Pauperis and Filing Fee**

The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $69.16. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00.

TERMPSREF

28 U.S.C. § 1915(b)(2).  The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

**II.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent

standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

### III.     Complaint

In his three-count Complaint, Plaintiff alleges that his Eighth Amendment rights were violated when he was denied adequate medical care. Plaintiff names Centurion Inc. and Centurion provider Siji Thomas as Defendants.[1] He is seeking monetary damages, an injunction requiring Centurion to send him to a cancer specialist for necessary medical treatment,[2] and a declaration that Defendants violated his Eighth Amendment rights.

Plaintiff's claims are based on the following allegations:

On August 30, 2018, a pelvic ultrasound revealed that Plaintiff had a 1.5 inch nodule on his prostate. (Doc. 1 at 3.)[3] In response to this finding, a non-party provider, Dr. Thompson, ordered an endorectal ultrasound on September 11, 2018.[4] (*Id.*)

On May 2, 2019, Plaintiff was transferred to ASPC-Eyman, where he immediately submitted a Health Needs Request (HNR) advising of his condition and requesting that ASPC-Eyman's medical unit assume treatment. (*Id.*) On or about August 26, 2019, Defendant Thomas submitted a request for an endorectal ultrasound. (*Id.*) The ultrasound was not performed, and on November 5, 2019, Plaintiff submitted a second HNR reporting that significant prostate pain was preventing him from sleeping or attending classes. (*Id.*)

---

[1] On July 1, 2019, Centurion of Arizona, L.L.C., assumed responsibility for providing medical care to Arizona Department of Corrections (ADC) prisoners under a contract with ADC. Prior to that time, Corizon Health L.L.C. ("Corizon") served as the private health care provider for ADC. Although some of Plaintiff's allegations relate to events that occurred before July 1, 2019, his failure to name Corizon as a Defendant indicates that he is not seeking relief based on those events.

[2] If Plaintiff seeks injunctive relief during the pendency of this case, he must file a motion for a temporary restraining order and/or preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

[3] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

[4] Plaintiff states that his pelvic ultrasound was conducted "at another prison" (Doc. 1 at 3), but he does not identify the facility or indicate whether he was in ADC custody at the time.

He received a response stating that he was scheduled to see a provider on November 15, 2019. (*Id*.)

Plaintiff did not see a provider until December 6, 2019, when he was seen by Defendant Thomas.[5] (*Id*. at 3, 4.) At that appointment, Thomas called clinical coordinator Terri Espinosa, who stated that Plaintiff had been scheduled for an endorectal ultrasound at "M.M.G.," but M.M.G. could not perform the procedure. (*Id*. at 4.) Espinosa indicated that she would schedule the procedure with Banner Health, which had advised that it could perform the ultrasound. (*Id*.) In her notes from this appointment, Defendant Thomas stated that Plaintiff had reported ongoing prostate pain; that a prior ultrasound of Plaintiff's scrotum "showed trace R hydrocele"; that Plaintiff was experiencing painful urination, painful bowel movements, testicular pain and swelling, and difficulty with sexual arousal; and that approval for an endorectal ultrasound had been obtained but no appointment had been scheduled. (*Id*.) Thomas also stated that she had "offered to increase Flomax, but Patient declined." (*Id*.)

On December 29, 2019, Thomas called Espinosa to inquire about the status of Plaintiff's endorectal ultrasound and was told by Espinosa that Banner did *not* perform the procedure. (*Id*.) Defendant Thomas then canceled Plaintiff's endorectal ultrasound and advised Plaintiff that he would receive an "urgent" urology consult within 30 days. (*Id*. at 4, 5.) Thomas did not submit the request for a urology consultation until January 24, 2020. (*Id*. at 5.) Thomas stated in this request that she was seeking authorization for "evaluation and management or possible prostate biopsy by urologist" for a 34-year-old male who had a history of nodular prostate, was experiencing difficulty urinating, had been diagnosed with a nodular prostate in October 2018,[6] and had a family history of prostate cancer. (*Id*.) Thomas also stated that Plaintiff was supposed to have had a "TRUS"—presumably referring to the requested rectal ultrasound—but the TRUS, which had been ordered in

---

[5] Trainee Pamela Olmstead was also in attendance. (Doc. 1 at 4.)

[6] Plaintiff states that he showed Defendant Thomas his August 30, 2018 ultrasound results and the September 11, 2018 endorectal ultrasound order, but he does not identify when these materials were shown to Thomas. (Doc. 1 at 5.)

August 2019, had never been performed. (*Id.*) Thomas noted that Plaintiff had reportedly lost ten pounds in one month. (*Id.*)

Defendant Thomas's request for a urology consultation was authorized on January 31, 2020, but no consultation has taken place. (*Id.* at 5, 6.) And although Plaintiff was informed by M.P. Burns and Defendant Thomas on January 29, 2020, that he would be seen weekly "to monitor his condition and inform [him] o[f] the status of his consult," he has not been advised of the status of his urology consultation or been seen by a provider since that time. (*Id.* at 6.) As a result of Defendants' conduct, Plaintiff's medical condition has deteriorated and he has been placed on psychiatric medication.

In Count One, Plaintiff appears to assert a claim based on events that occurred between July 1, 2019,[7] and December 29, 2019, including the cancellation of Plaintiff's endorectal ultrasound. Count Two appears to be based on Defendant Thomas's purported delay in requesting a urology consultation following Plaintiff's December 29, 2019 appointment and Plaintiff's failure to receive that consultation. Count Three is premised on Plaintiff's failure to be seen weekly on the provider line and updated on the status of his urology consultation.

**IV.   Failure to State a Claim**

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

. . . .

. . . .

---

[7] *See* n.1, *supra*.

### A. Defendant Centurion

To state a claim under § 1983 against a private entity performing a traditional public function, such as providing medical or dental care to prisoners, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). A plaintiff must allege the specific policy or custom and how it violated his constitutional rights. A private entity is not liable simply because it employed individuals who allegedly violated a plaintiff's constitutional rights. *See Tsao*, 698 F.3d at 1139. Plaintiff does not allege that his injuries occurred as the result of a policy or custom of Defendant Centurion. Accordingly, Plaintiff has failed to state a claim against Centurion, and this Defendant will be dismissed.

### B. Count Three

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the

way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Plaintiff alleges in Count Three that he has not received the weekly appointments he was promised or been advised of the status of his authorized urology consultation. While he alleges that Defendant Thomas promised he would be seen on the provider line weekly, he does not allege any facts to show that his failure to receive these appointments and updates was a result of deliberately indifferent conduct on the part of Thomas. Indeed, it is not even clear that Thomas is aware of this failing. Accordingly, Plaintiff has failed to state a claim against Defendant Thomas in Count Three, and this count will be dismissed without prejudice.

**V.     Claims for Which an Answer Will be Required**

Liberally construed, Plaintiff has stated a claim against Defendant Thomas in Counts One and Two, and this Defendant will be required to respond to the Complaint.

**VI.    Motion for Appointment of Counsel**

Plaintiff requests that counsel be appointed to represented him because his current incarceration renders him unable to investigate his claims, collect evidence, or "argue this

matter." Plaintiff also states that his psychological medication hinders his thinking, memory, and "other functions," and he implies that he lacks education and adequate law library access.

There is no constitutional right to the appointment of counsel in a civil case. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 269 (9th Cir. 1982). In proceedings in forma pauperis, the court may request an attorney to represent any person unable to afford one. 28 U.S.C. § 1915(e)(1). Appointment of counsel under 28 U.S.C. § 1915(e)(1) is required only when "exceptional circumstances" are present. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A determination with respect to exceptional circumstances requires an evaluation of the likelihood of success on the merits as well as the ability of Plaintiff to articulate his claims pro se in light of the complexity of the legal issue involved. *Id.* "Neither of these factors is dispositive and both must be viewed together before reaching a decision." *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

Having considered both elements, it does not appear at this time that exceptional circumstances are present that would require the appointment of counsel in this case. Plaintiff is in no different position than many pro se prisoner litigants. Thus, the Court will deny without prejudice Plaintiff's Motion for Appointment of Counsel.

**VII.   Warnings**

   **A.   Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a <u>non</u>-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

   **B.   Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other

relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C. Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4. Plaintiff may comply with Federal Rule of Civil Procedure 5(d) by including, with every document he files, a certificate of service stating that this case is subject to General Order 14-17 and indicating the date the document was delivered to prison officials for filing with the Court.

**If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's Application to Proceed In Forma Pauperis (Doc. 2) is **granted**.

(2) As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $69.16.

TERMPSREF

(3) Plaintiff's Motion for Appointment of Counsel (Doc. 6) is **denied** without prejudice.

(4) Count Three and Defendant Centurion are **dismissed** without prejudice.

(5) Defendant Thomas must answer Counts One and Two.

(6) The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendant Thomas.

(7) Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(8) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(9) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(10) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(11) If Defendant agrees to waive service of the Summons and Complaint, she must return the signed waiver form to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(12) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned

by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

    (a)    personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b)    within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(13) Defendant must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(14) This matter is referred to Magistrate Judge Camille D. Bibles pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 2nd day of June, 2020.

*David G. Campbell*
David G. Campbell
Senior United States District Judge

TERMPSREF