JDN

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Heath Shores,<br><br>    Plaintiff,<br><br>vs.<br><br>Centurion Incorporated, et al.,<br><br>    Defendant. | No.  CV 20-00759-PHX-DGC (CDB)<br><br>**ORDER** |

Plaintiff Robert Heath Shores, who is confined at the Arizona State Prison Complex-Eyman in Florence, Arizona, brought this pro se civil rights action under 42 U.S.C. § 1983 against Centurion Health and Nurse Practitioner (NP) Siji Thomas. (Doc. 27.) Before the Court is Shores' Renewed Motion for Preliminary Injunction, which seeks emergency medical treatment for his prostate. (Doc. 42.) The Court will deny the Renewed Motion.

**I.      Background Summary**[1]

In his First Amended Complaint, Shores alleged that he was, and continues to be, denied necessary medical care for a nodule on his prostate and worsening prostate-related pain and symptoms. (Doc. 27.) He named as Defendants NP Thomas and Centurion, the private company contracted to provide health care to prisoners in the Arizona Department of Corrections. (*Id.*) Shores alleged that Defendants have failed to treat or monitor his

---

[1] A thorough background and facts detailing Shore's condition and treatment is set forth in the Court's August 13, 2020 Order. (Doc. 39.)

condition adequately or provide physician-ordered treatment. (*Id.* at 3–8.) Shores stated that, as a result, he has had to have a Foley catheter placed with a leg bag, and he may require this device for the rest of his life. (*Id.* at 9.) In his request for relief, Shores sought money damages, declaratory relief, and injunctive relief in the form of necessary treatment from a cancer specialist. (*Id.* at 19–20.)

On June 12, 2020, Shores filed a Motion for Preliminary Injunction, in which he stated that he finally saw a urologist on April 25, 2020, but that he had not received the follow-up treatment recommended by the urologist and that his symptoms and pain had worsened. (Doc. 11 at 2–4.) He requested an order directing Centurion to send him to a cancer specialist. (*Id.* at 4.)

Medical records submitted with briefing on the Motion for Preliminary Injunction showed that on April 25, 2020, Shores saw urologist Dr. Peter Niemczyk, who ordered an ultrasound and lab tests and recommended that Shores return in two weeks for further testing. (Doc. 20-3 at 3–7.) Shores did not see Dr. Niemczyk again until July 18, 2020. (Doc. 33-1 at 12.) At the July 18 appointment, Dr. Niemczyk conducted an examination and ultrasound and assessed possible dysfunctional voiding; however, urodynamics testing was necessary to confirm. (*Id.* at 13.) Dr. Niemczyk ordered a two-week follow up and urodynamics testing, which he noted was "urgent." (*Id.* at 10.) Medical records showed that Centurion authorized a urology consult for urodynamics testing, and Shores was scheduled to see Dr. Niemczyk for a date in August 2020. (*Id.* 6–8.)

On August 13, 2020, the Court entered an Order on the Motion for Preliminary Injunction. (Doc. 39.) The Court determined that there were serious questions whether Centurion had denied and delayed necessary physician and specialist-ordered treatment and whether the delays were medically unacceptable under the circumstances. (*Id.* at 10–12.) But because Shores saw the urologist on July 18, 2020, which was essentially the relief he sought, the Court denied the Motion for Preliminary Injunction without prejudice to refiling. (*Id.* at 13.) The Court noted that there was a pending August 2020 follow-up appointment scheduled, and that if that appointment did not occur, or Defendants did not

provide the treatment recommended by Dr. Niemczyk at that appointment, Shores could renew his Motion. (*Id.*)

On August 31, 2020, Shores filed his pending Renewed Motion for Preliminary Injunction. (Doc. 42.) He states that medical staff delayed seeing him despite his severe pain, and when he was finally seen he was diagnosed with a severe urinary tract infection. (*Id.* at 1–2.) Shores states that he saw Dr. Niemcyzk on August 16, 2020, but to date he has not been returned to the urologist despite a recommendation for a two-week follow up. (*Id.* at 2–3.) Shores requests that an order be issued directing Defendants to change Shores' leg bag every seven days, change his catheter every 30 days, not refuse medical care, and return Shores to the urologist within the two-week recommended timeframe and follow through with all the specialist's recommendations. (*Id.* at 4.)

In their opposition to the Motion, Defendants claim that the medical records show Shores was returned to the urologist on September 26, 2020, and that medical staff has been responsive to Shores' medical needs, including providing leg bag changes and a catheter change. (Doc. 55 at 1–2.)

**II.   Additional Facts**

During the first two weeks in August 2020, Shores reported to officers and via health needs requests (HNRs) that he was in severe pain and needed medical attention, but he was told to change the leg bag by himself and medical refused to see him until August 14, 2020. (Doc. 42 at 2.) By that time, Shores was in severe pain, had a 102-degree temperature, and was diagnosed with a severe urinary tract infection. (*Id.*) Shores was prescribed three different antibiotics, but his catheter was not changed. (*Id.* at 2–3.)

Shores saw Dr. Niemczyk on August 16, 2020. (*Id.* at 3.)[2] The urodynamics testing could not be done due to the urinary tract infection. (*Id.* at 2–3.) Dr. Niemczyk changed the catheter and recommended that Shores return in two weeks for the testing. (*Id.* at 3.)

---

[2] Defendants did not submit the medical record from the August 16, 2020 encounter. (*See* Doc. 55.)

- 3 -

On September 1, 2020, Shores submitted an HNR stating that he saw urology on August 16, 2020, and the urologist made an urgent request that Shores return in two weeks. Shores requested to be sent to urology as soon as possible as he was in severe pain. (Doc. 58 at 6.) In response to the HNR, Shores saw NP Thomas. (Doc. 55-1 at 3.) NP Thomas spoke to the clinical coordinator to expedite the urology consult, prescribed Lorazepam as a trial for dysfunctional voiding per the urologist's recommendation, and spoke to Shores about a plan to change the urobag monthly. (*Id.* at 5.)

Defendants submit a Consultation Request Action form showing a request for urology consult initially made on July 21, 2020. (*Id.* at 7.) A note on this form, dated September 8, 2020, states that the first available appointment with Dr. Niemczyk was September 26, 2020. (*Id.*)

On September 13, 2020, Shores submitted an "urgent" HNR stating that the urologist requested Shores return for a two-week follow up and it had been four weeks since he saw the urologist. (Doc. 58 at 3, 10.) Shores requested that medical staff please stop delaying the specialist-recommended treatment. (*Id.*)

On September 16, 2020, Nurse Anderson changed Shores' catheter. (Doc. 55-1 at 8, 11.)

On September 26, 2020, Shores saw Dr. Niemczyk. (*Id.* at 13.)[3] On a Centurion form that Dr. Niemczyk filled out following this appointment, Dr. Niemczyk wrote that the finding was voiding dysfunction, the diagnosis and prescription was "same," and that follow up included (1) pelvic floor physical therapy and (2) clean or sterile intermittent catheterization. (*Id.*)

On September 27, 2020, Shores went to medical for a leg bag change because the twist cap on his bag popped off into the toilet as he emptied the bag. (*Id.* at 26–27.) Shores was given a new bag, and he changed the bag himself. (*Id.* at 27.)

…

---

[3] Defendants did not submit the medical record from the September 26, 2020 encounter. (*See* Doc. 55.)

- 4 -

### III. Preliminary Injunction Standard

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits— then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

### IV. Discussion

To support a mandatory preliminary injunction for specific medical treatment, Shores must demonstrate ongoing harm or the present threat of irreparable injury, not a past injury. *See Conn. v. Mass.*, 282 U.S. 660, 674 (1931) (an injunction is only appropriate "to prevent existing or presently threatened injuries"); *Caribbean Marine*, 844 F.2d at 674.

The medical records show that Shores saw Dr. Niemczyk on September 26, 2020. (Doc. 33-1 at 12–13.) The records also show that medical staff changed Shores' catheter on September 16, 2020, and they spoke to him about changing the leg bag monthly. It is troubling that Defendants did not submit the relevant August 16 and September 26, 2020 medical records. Nonetheless, Shores did not file a Reply in support of his Motion and, therefore, did not dispute that the only recommended follow up noted on September 26, 2020 was pelvic floor physical therapy and intermittent catherization. On November 17, 2020, Shores filed a Motion seeking a status request on the pending Renewed Motion for

Preliminary Injunction. (Doc. 59.) In this Motion, Shores did not provide any further facts suggesting that the physical therapy or intermittent catherization was not being done. (*Id.*)

In short, the record indicates that Shores has effectively received the relief sought in his Renewed Motion for Preliminary Injunction. *See Farmer*, 511 U.S. at 846. Accordingly, the request for injunctive relief is moot, and the Renewed Motion for Preliminary Injunction will be denied without prejudice.

**IT IS ORDERED** that the reference to the Magistrate Judge is withdrawn as to Plaintiff's Renewed Motion for Preliminary Injunction (Doc. 42), and the Motion is **denied**.

Dated this 7th day of December, 2020.

David G. Campbell
Senior United States District Judge